IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. PD-1156-10






THE STATE OF TEXAS 



v.


JED JORDAN, Appellee





On Discretionary Review of 


Case 03-09-00530-CR of the


Third Court of Appeals,


Travis County






 Womack, J., delivered the opinion of the unanimous Court.



 Appellee Jed Jordan was charged by information with misdemeanor Driving While
Intoxicated. Prior to trial, he moved to suppress evidence obtained upon execution of a warrant
for seizure of his blood. The trial court granted his motion and, upon the State's interlocutory
appeal, the Third Court of Appeals affirmed. (1) We granted review. (2)

 We hold that the Court of Appeals' analysis of the warrant affidavit failed to consider
reasonable inferences that provided a substantial basis for the magistrate's determination of
probable cause. We shall reverse the decisions of the courts below.I. Affidavit A magistrate of the Municipal Court in Austin was presented with an Affidavit for Search
Warrant in the early morning hours of June 6, 2008. In the affidavit, Austin Police Sergeant K.
Suitt deposed that he or she had "good reason to believe that heretofore, on or about the 6th day
of June, 2008, ... Jed Jordan ... did then and there commit [the offense of Driving While
Intoxicated]." Suitt then deposed that he or she had probable cause for this belief by reason of
certain facts. The facts listed by Suitt comprised observations by fellow police officers that the
appellee drove the wrong way on a one-way street and exhibited various symptoms of
intoxication, but the affidavit did not state specifically that the observations were made on June
6th. The affidavit was subscribed and sworn to before the magistrate on June 6th, and the
magistrate issued a Search Warrant for Blood at 3:54 a.m. on that same date. 

II. Motion to Suppress

 The appellee filed a pretrial motion to suppress evidence obtained by a search of the
appellee's person pursuant to an invalid search warrant. At a hearing on the motion, the trial
court stated that the magistrate made a reasonable and permissible inference that police
observations were made on June 6th. However, the court stated that "time is a critical issue and
needs to be specifically included in the facts of an affidavit for a warrant to seize somebody's
blood in a DWI case." Because the affidavit did not state "the time that the observations of the
conduct of the defendant were made," the trial court granted the motion.

 The Third Court of Appeals affirmed because the affidavit did not establish the date of
the observations:

 Suitt's statement in his affidavit that "I have good reason to believe that
heretofore, on or about the 6th day of June, 2008 in the County of Travis and State
of Texas, Jed Jordan ... did then and there commit" the offense of driving while
intoxicated was not a statement of fact; it was merely a statement of the officer's
belief. A police officer's conclusion that a crime has been committed does not
give a magistrate a substantial basis for determining that probable cause exists. It
is the facts giving rise to the officer's suspicion that are determinative, and the
affidavit in this case was completely silent as to the date and time when Jordan
was stopped by Forshee and observed by Gilbert, and when Gilbert passed on his
information to Suitt. Therefore, although the facts contained in the affidavit were
sufficient to warrant the conclusion that Jordan had been driving while intoxicated
on some date, the affidavit contained no facts from which a reasonable inference
could be drawn as to what that date was. (3)


The Court noted that it expressed no opinion as to whether the warrant would have been
insufficient for failure to specify the time even if the date had been properly established. (4)

III. Standard of Review

 The Fourth Amendment to the United States Constitution requires that "no warrants shall
issue, but upon probable cause, supported by oath or affirmation, and particularly describing the
place to be searched, and the persons or things to be seized." Under Article 18.01 of the Code of
Criminal Procedure, a search warrant may be obtained from a magistrate only after submission of
an affidavit setting forth substantial facts establishing probable cause. (5)

 Probable cause exists if, under the totality of the circumstances set forth in the affidavit
before the magistrate, there is a "fair probability" (6) that contraband or evidence of a crime will be
found in a particular place at the time the warrant is issued. (7) The magistrate may interpret the
affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the
facts and circumstances contained within its four corners. (8)

 Reviewing courts give great deference to a magistrate's determination of probable cause. (9) 
"[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for
concluding that probable cause existed." (10) 

IV. Analysis 

 In this case the Court of Appeals analyzed separately the affiant's introductory statement
and the subsequent description of facts, instead of considering the totality of the circumstances
contained within the four corners of the affidavit. It is true, as the Court stated, that "a police
officer's conclusion that a crime has been committed does not give a substantial basis for
determining that probable cause exists." (11) For that proposition the Court cited Gates, which
relied on Nathanson v. United States (12) and Aguilar v. Texas. (13) In both Nathanson and Aguilar,
the problem was "bare bones" (14) affidavits providing only conclusory statements that an offense
had been committed and evidence would be found at a particular location. The affidavits did not
provide any underlying facts to allow the magistrate to make the judgment as to probable cause. 

 Under Nathanson and Aguilar, Suitt's introductory statement that an offense had been
committed on June 6, 2008, would not be sufficient on its own to establish probable cause. But
that does not mean that the introductory statement should not be considered in conjunction with
the facts described below that statement. Testing the two parts of the affidavit separately for
probable cause runs afoul of the Supreme Court's instruction to review the "totality of the
circumstances" (15) set forth within the four corners of the affidavit. 

 In the present affidavit, Suitt first said that the appellee committed the offense of Driving
While Intoxicated on June 6, 2008, and then described the driving and intoxication that
constituted elements of that offense. The magistrate needed to know when the appellee was
stopped in order to determine the probability that evidence of an offense would be found in the
appellee's blood at the time the warrant issued. Under the facts and circumstances of this case,
the affiant's introductory statement that the offense occurred on June 6, 2008, provided the
magistrate with a substantial basis to infer that the driving and intoxication elements then
described in the affidavit were observed on that same date.

 An instructive contrast is found in Garza v. State. (16) In that Prohibition Era case, the
affiants stated their belief that there was "on this date" a private dwelling owned by the appellant
and that "whisky, wine, beer, mash, the same being intoxicating liquors, are illegally possessed,
sold and manufactured in said private dwelling." (17) This belief was based on the following fact:
"J.L. Cook says he personally saw a man leave the house aforementioned with some beer he
claimed to have purchased therein." (18) The affidavit was found inadequate because nothing in the
affidavit adequately described when the Cook observation took place - it could have occurred "at
some remote date preceding the making of the affidavit." (19) Unlike the present case, the beer
possession observed by Cook was offered to establish probable cause to believe that evidence of
a separate possession offense would be found in the dwelling. In Garza it was therefore not a
reasonable inference that the date of the Cook observation was the same as the date of the alleged
offense.

 The Court of Appeals also stated that Schmidt "contradicts any argument that a police
officer's statement that he believes that events occurred on or about a certain date, without any
facts to support that belief, is sufficient to support an inference that the events did occur on that
date." (20) We find Schmidt to be distinguishable.

 In Schmidt, officers sought a search warrant for a vehicle. The affiant alleged that
Schmidt possessed cocaine "on or about the 9th day of April, 1980." (21) The affiant stated that he
had "proba[b]le cause for said belief" by reason of certain facts. (22) Among those facts was that
Schmidt "is presently under medical attention after being found in the above described vehicle,
apparently in need of medical assistance. [An] ambulance was called and Tim Bell and Myra
Stephens responded. When they arrived,  Schmidt told them that he had been sniffing cocaine
since he left Florida to stay awake." (23) 

 We found that the affidavit was insufficient for the following reason:

 The affidavit  fails to state when the affiant received the information from Bell
 or when Bell obtained his information. There is nothing in the affidavit to
demonstrate when the incident it describes took place. The only reference to time
in the affidavit is that the appellant "is presently under medical attention" after
being "found" in the automobile. No assertion is made as to how long the
appellant had been "under medical attention"-whether for a few hours or a few
months. (24)


The problem in Schmidt was that the affiant described a series of events of indeterminate
duration - from driving while sniffing cocaine, to finding the vehicle, to calling the ambulance,
to providing medical treatment. The magistrate needed to know how much time elapsed between
the events and the submission of the affidavit in order to determine the probability of evidence's
being found in the vehicle when a warrant issued. But the only date given was that of the alleged
possession, while the events supporting the allegation could have occurred at some remote time.

 The present affidavit does not present the same problem as Schmidt. The observations of
driving and intoxication described in the second part of the affidavit were the elements of the
offense alleged in the first part of the affidavit. Under the circumstances of this case, it was a
reasonable inference that the observations occurred on the same date that the offense was alleged
to have occurred. We therefore hold that the Court of Appeals erred in failing to consider the
totality of the circumstances contained within the four corners of the affidavit in reviewing the
magistrate's basis for determining probable cause. 

 We also find that the magistrate had a substantial basis for determining probable cause
despite the failure of the affiant to specify the time of the stop. Because the warrant was issued on
June 6th at 3:54 a.m., less than four hours could have elapsed between the observation of the
offense, the stop, and the issuance of the warrant.

 The appellee argues, "When the length of time from the point of arrest stretches into
hours, the less accurate the test of the sample will be on its face, and the testimony of the expert,
if such evidence is even available, becomes even more speculative. And certainly not every case
will provide enough facts for an expert to even venture an opinion about the defendant's level of
intoxication at the time of the arrest using this method of 'retrograde extrapolation.'" 

 While we have recognized that "testing nearer in time to the time of the alleged offense
increases the ability to determine the subject's offense-time BAC," (25) retrograde extrapolation to a
specific blood-alcohol concentration was not necessary for the appellee's blood to be evidence of
a crime. (26) Evidence of any amount of alcohol, or any other substance or combination falling
within the definition of "intoxicated" in Section 49.01(2) of the Penal Code, could be probative
of intoxication because it would provide evidence that the appellee had introduced such a
substance into his body. (27) Given the symptoms of intoxication described in the affidavit, we hold
that the magistrate had a substantial basis to determine that evidence of intoxication would
probably be found in the appellee's blood within four hours of the stop.

 The appellee also argues that "if the sample is just being taken to show that [the appellee]
had consumed alcohol[,] that would be merely cumulative evidence" because police had already
determined that the appellee had consumed alcohol. The appellee fails to cite, nor do we know
of, any authority for the proposition that evidence from a blood test is merely cumulative of field
sobriety tests, or for the proposition that the potential for the collection of cumulative evidence
should invalidate a magistrate's determination of probable cause. 

 We reverse the judgment of the Court of Appeals and remand to the trial court for further
proceedings not inconsistent with this opinion. (28)


Delivered June 29, 2011.

Publish.
1. State v. Jordan, 315 S.W.3d 660 (Tex. App.-Austin 2010).
2. On our own motion, we also granted review to consider whether the record must reflect the evidence
suppressed before an appellate court may consider such an appeal. In light of our recent holding in State v. Chupik,
PD 0960-10 (Tex. Cr. App. June 15, 2011), that the record need not reflect the evidence suppressed, we now dismiss
this ground for review as improvidently granted. 
3. Jordan, 315 S.W.3d, at 663 (internal citations omitted).
4. Id., at 663 n.2.
5. Tex. Code Crim. Proc. art. 18.01(b).
6. Illinois v. Gates, 462 U.S. 213, 238 (1983); Flores, 319 S.W.3d 697, 702 (Tex. Cr. App. 2010);
Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Cr. App. 2007).
7. Schmidt v. State, 659 S.W.2d 420, 421 (Tex. Cr. App. 1983) ("The facts submitted to the magistrate ...
must be sufficient to justify the conclusion that the property that is the object of the search is probably on the
premises to be searched at the time the warrant issues.") (emphasis in original); Cassias v. State, 719 S.W.2d 585,
588 (Tex. Cr. App. 1986).
8. Flores, 319 S.W.3d, at 702; Cassias, 719 S.W.2d, at 588-89. In United States v. Ventresca, 380 U.S. 102,
108-09 (1965), the Supreme Court described the flexibility that should be accorded to magistrates: 

 These decisions reflect the recognition that the Fourth Amendment's commands, like all
constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are
to be followed and the constitutional policy served, affidavits for search warrants, such as the one
involved here, must be tested and interpreted by magistrates and courts in a commonsense and
realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal
investigation. Technical requirements of elaborate specificity once exacted under common law
pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts
toward warrants will tend to discourage police officers from submitting their evidence to a judicial
officer before acting.

 This is not to say that probable cause can be made out by affidavits which are purely
conclusory, stating only the affiant's or an informer's belief that probable cause exists without
detailing any of the "underlying circumstances" upon which that belief is based. Recital of some of
the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached
function and not serve merely as a rubber stamp for the police. However, where these
circumstances are detailed, where reason for crediting the source of the information is given, and
when a magistrate has found probable cause, the courts should not invalidate the warrant by
interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a
particular case it may not be easy to determine when an affidavit demonstrates the existence of
probable cause, the resolution of doubtful or marginal cases in this area should be largely
determined by the preference to be accorded to warrants.
9. Gates, 462 U.S., at 236; Rodriguez, 232 S.W.3d, at 59-60. 
10. Gates, 462 U.S., at 238-39 (internal quotations omitted).
11. Jordan, 315 S.W.3d, at 663. 
12. 290 U.S. 41 (1933).
13. 378 U.S. 108 (1964).
14. Gates, 462 U.S., at 239.
15. Gates, 462 U.S., at 238.
16. 48 S.W.2d 625 (Tex. Cr. App. 1932) (op. on reh'g).
17. Id., at 626.
18. Id.
19. Id., at 627.
20. Jordan, 315 S.W.3d, at 664.
21. Schmidt, 659 S.W.2d, at 421.
22. Ibid.
23. Ibid.
24. Ibid.
25. Mata v. State, 46 S.W.3d 902, 916 (Tex. Cr. App. 2001).
26. See Gates, 462 U.S., at 238-39 ("The task of the issuing magistrate is simply to make a practical,
common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the
'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that
contraband or evidence of a crime will be found in a particular place.").
27. See Stewart v. State, 129 S.W.3d 93, 96 (Tex. Cr. App. 2004) (breath-test results were relevant despite
lack of retrograde extrapolation testimony because they provided evidence that Stewart had consumed alcohol);
Mechler v. State, 153 S.W.3d 435, 440-42 (Tex. Cr. App. 2005) (breath-test results were not more prejudicial than
probative despite lack of retrograde extrapolation testimony).
28. Despite our holding, we note that the better practice is for affiants to specify the times of critical events
described so that magistrates have more precise information with which to determine probable cause.